UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRC TIRE SALES, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>EXTREME TIRE & SERVICE, INC.,<br><br>        Defendant. | No. CV-08-015-FVS<br><br>TENTATIVE CONCLUSIONS |

**THIS MATTER** comes before the Court based upon the defendant's motion to dismiss for lack of personal jurisdiction. The defendant is represented by Ross White and Geana M. Van Dessel. The plaintiff is represented by Robert A. Dunn and Michael R. Tucker.

**BACKGROUND**

TRC Tire Sales, LLC, ("TRC Tire") is organized under the law of the law of the State of Washington. Its principal place of business is Spokane, Washington. Extreme Tire & Service, Inc., ("Extreme Tire") is organized under the law of the State of Louisiana. Its principal place of business is Mandeville, Louisiana. TRC Tire purchased two used, commercial tires from Extreme Tire for the sum of one-hundred thirty thousand dollars. Afterward, TRC Tire allegedly learned the tires have defects which render them commercially worthless. TRC Tire filed an action against Extreme Tire in Spokane County (Washington) Superior Court. TRC Tire is seeking relief under both contract and tort law. Extreme Tire removed the action to United

TENTATIVE CONCLUSIONS - 1

States District Court for the Eastern District of Washington, 28 U.S.C. § 1446, based upon diversity of citizenship, 28 U.S.C. §§ 1441(b), 1332(a)(1). Now, Extreme Tire moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(2) on the ground that it is not subject to personal jurisdiction in this forum.[1]

The story begins late in 2006. At the time, the tires at issue in this case were owned by a third party and located in Phoenix, Arizona. The third party wanted to sell the tires. The owner of Extreme Tire, Ronnie Rachal, hoped to broker a sale. To that end, he listed the tires upon his company's website and sent a mass email to tire dealers around the United States, including at least one, and perhaps as many as six, in Washington.[2]

Thomas Servine, one of TRC Tire's co-owners, learned about the tires from another Washington tire dealer. He telephoned Mr. Rachal on July 24, 2007. Mr. Servine alleges that Mr. Rachal told him the tires were "clean"; that is to say, they did not have any repairs and did not need any. Mr. Servine decided to purchase the tires. The terms of the purchase were finalized via telephone and email.

As explained above, the tires were owned by a third party and located in Phoenix. Extreme Tire bought the tires from the third party and sold them to TRC Tire. Rick Pettit, TRC Tire's other co-

---

[1] TRC Tire submitted a "Sur Reply" in violation of Local Rule 7.1 without seeking a waiver of the rule's limitations.

[2] TRC Tire alleges that the Extreme Tire's email indicated the tires were "clean," which is a term of art within the industry. (Plaintiff's Response (Ct. Rec. 10), ¶ 10, at 5 (citing TRC 00014)). The email that TRC Tire cites in support of this proposition appears to be dated August 28, 2007, *i.e.*, after TRC Tire purchased the tires from Extreme Tire.

TENTATIVE CONCLUSIONS - 2

owner, flew to Phoenix on or about July 25th and arranged for the tires to be trucked to the company's storage facility, which is located in the State of Idaho. There was some confusion with respect to the purchase price. Mr. Servine called Mr. Rachal and discussed the matter. Ultimately, he agreed to pay $130,000 for the tires. TRC Tire wired payment to Extreme Tire.

TRC Tire planned to sell the tires to a dealer in the State of North Dakota. The North Dakota dealer asked TRC Tire to ship the tires to an expert in the State of Montana for inspection. The expert determined that the tires needed repair. As a result, the North Dakota dealer refused to accept the tires. TRC Tire arranged for another expert in Montana to examine the tires. He discovered damage that the first expert missed. In the opinion of the second expert, the tires have no commercial value.

After receiving the second expert's report, Mr. Servine attempted to communicate with Mr. Rachal by telephone and by email. Mr. Servine alleges he sent numerous messages indicating that TRC Tire refuses to accept the tires on the ground they are nonconforming goods. According to Mr. Servine, Mr. Rachal has not responded to any of the messages. Consequently, TRC Tire filed the instant action.

**SPECIFIC JURISDICTION**

A nonresident company submits itself to the jurisdiction of Washington courts with respect to any cause of action that arises out of business which it transacts in this state. RCW 4.28.185(1)(a). The jurisdiction conferred by RCW 4.28.185(1)(a) -- *i.e.*, specific jurisdiction -- extends to the limit imposed by the due process clause. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir.1995). Exercising specific jurisdiction over a nonresident

TENTATIVE CONCLUSIONS - 3

company is consistent with due process if the company directed acts at this forum, the plaintiff's claims arise out of the company's forum-related acts, and requiring the nonresident company to defend itself in this forum would be reasonable. *See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir.2006) (*en banc*).

## A. Purposeful Direction

The first prong of the Ninth Circuit's three-prong, specific jurisdiction-jurisdiction test is purposeful direction. TRC Tire may satisfy this prong by establishing that Extreme Tire "committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state." 433 F.3d at 1206 (internal punctuation and citations omitted).

*1. Intentional act*

TRC Tire must show that Extreme Tire's jurisdictionally-relevant acts were intentional. *Id.* at 1209. Mr. Rachal does not dispute that he sent an email to dealers in the State of Washington advertising the tires, and that he spoke by telephone with both Mr. Servine and Mr. Pettit. These are intentional acts.

*2. Express aiming*

An act is expressly aimed at the forum if it has or will have a significant impact upon the plaintiff in that state. *Id.* An expressly-aimed act need not be wrongful, although some are. *Id.* at 1207-08. The following are examples of expressly-aimed acts:

In *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989), an administrator at the University of Arizona allegedly called an administrator at the University of Alberta and inquired about a professor who was then employed by the University of

TENTATIVE CONCLUSIONS - 4

Arizona but who formerly had been employed by the University of Alberta. The Canadian administrator allegedly made disparaging remarks about the Arizona professor. *Id.* The Arizona professor filed an action in the State of Arizona alleging that the comments violated an agreement he had with the University of Alberta and, in addition, tortiously undermined his employment with the University of Arizona. *Id.* The Ninth Circuit held that the Canadian administrator was subject to specific jurisdiction in Arizona. *Id.* at 1259-60. Since deciding *Brainerd*, the Ninth Circuit has cited the Canadian administrator's comments as an instance of express aiming. *See, e.g., Bancroft & Master, Inc. v. August Nat'l Inc.*, 223 F .3d 1082, 1087-88 (9th Cir.2000). Even though he did not initiate the calls, the statements that he allegedly made "during the conversations were not 'untargeted negligence' but rather were 'performed for the very purpose of having their consequences felt in the forum state.'" *Id.* (quoting *Brainerd*, 873 F.2d at 1260).

In *Bancroft & Master, Inc. v. August Nat'l Inc.*, a Georgia organization sent a letter to the Virginia headquarters of an organization that served as the registrar of domain names. 223 F.3d at 1084-85. The Georgia organization complained to the registrar that a California corporation was using its domain name without authorization. *Id.* at 1085. The California corporation filed an action in California. *Id.* The Ninth Circuit held that the Georgia organization's complaint was expressly aimed at the forum state. Despite the fact that the Georgia organization mailed its letter to Virginia, not California, the Georgia organization allegedly knew its letter would trigger the registrar's dispute-resolution procedures, forcing the California corporation to defend its right to use a domain

TENTATIVE CONCLUSIONS - 5

name. *Id.* at 1087-88.

In *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318-19 (9th Cir.1998), an Illinois resident sent a letter to the corporate office of a California corporation demanding payment for a domain name that he had hijacked. The corporation filed an action in California. *Id.* at 1319. The Ninth Circuit held that the Illinois resident was subject to specific jurisdiction in California. *Id.* at 1322-23. Since deciding *Panavision*, the Ninth Circuit has cited the Illinois resident's demand letter as an instance of express aiming. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir.2000).

In *Rio Properties, Inc. v. Rio Int'l Interlink*, a Costa Rican company ran radio and print advertisements in the State of Nevada offering gamblers an opportunity to wager on sporting events. 284 F.3d at 1012-13. A Nevada corporation filed suit in Nevada alleging that the Costa Rican company was doing business under a name that infringed its trademark. *Id.* The Ninth Circuit held that the Costa Rican company's advertisements were expressly aimed at the forum state because the ads allegedly were part of a marketing campaign which was designed to obtain customers in Nevada. *See id.* at 1020.

In *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1107 (9th Cir.2002), a California corporation filed an action in the State of California against two former employees who were citizens of the United Kingdom and Germany, respectively, and who lived and worked in Europe. The corporation alleged that the defendants had made false statements to the corporation's managers in California. *Id.* at 1109-10. The Ninth Circuit held that the defendants expressly aimed their communications at California based upon evidence they knew that the

TENTATIVE CONCLUSIONS - 6

corporation's "principal place of business was in California, knew that the decisionmakers for [the corporation] were located in California, and communicated directly with those California decisionmakers." *Id.* at 1112. At the same time, the Ninth Circuit recognized that not every foreign act with foreseeable effects in the forum state gives rise to specific jurisdiction. *Id.* (internal punctuation and citation omitted). The foreign act must have a significant impact. In *Dole*, that requirement was satisfied by evidence indicating that the defendants' communications were part of a scheme to induce the corporation's managers "to implement a new importing system, and, as a consequence, to enter into *significant and detrimental* contractual arrangements." *Id.* (emphasis added).

In *Yahoo! Inc.*, two French organizations obtained orders from a French court requiring a California internet service provider to prevent its customers in France from obtaining access to certain Nazi-related artifacts, texts, and websites. 433 F.3d at 1202-04. The internet service provider filed an action in California challenging the enforceability of the orders in the United States. *Id.* at 1204. The Ninth Circuit held that the orders were expressly aimed at California because, in order to comply, the internet service provider had to modify its servers, which were located in the forum state. *Id.* at 1209.

With the preceding cases in mind, it is appropriate to turn to the facts of this one. Extreme Tire regularly sends email advertisements to a limited number of Washington tire dealers. The purpose of the advertisements is to solicit business. *Cf. Rio Properties, Inc.*, 284 F.3d at 1020 (defendant conducted advertising campaign in forum state). Although TRC Tire did not receive an email

advertisement concerning the tires, Mr. Servine learned about them from some other source. He initiated contact with Mr. Rachal. His call is precisely the sort of inquiry that Mr. Rachal hoped his advertisements would generate. Ultimately, Mr. Rachal discussed the tires with both Mr. Servine and Mr. Pettit.[3] He knew they were TRC Tire's decisionmakers, and that their company's office is located in Washington. He hoped to persuade them to purchase the tires. *Cf. Panavision Int'l, L.P.*, 141 F.3d at 1322 (defendant sent a letter to the forum state seeking payment for the use of a domain name). Unlike the defendant in *Panavision Int'l, L.P.*, he succeeded; and when he did, he arranged for TRC Tire to wire payment to Louisiana. In certain respects, his conduct is similar to that described in *Dole*. 303 F.3d at 1112 (defendants allegedly misrepresented facts in order to manipulate the company's decision-making process). Without question, Mr. Rachal's alleged misrepresentations are far less elaborate than the ones alleged in *Dole*. Nevertheless, if TRC Tire's allegations are true, the company has sustained a serious financial loss as a result of Mr. Rachal's conduct; a loss which the company experienced in the forum state. *Dole*, 303 F.3d at 1113-14 (a corporation frequently suffers financial loss at its principal place of business). Given the significant impact that Mr. Rachal's jurisdictionally-relevant communications allegedly have had upon TRC Tire in the forum state, his communications constitute expressly aimed acts. *Yahoo! Inc.*, 433 F.3d at 1209 (an act is expressly aimed at the

---

[3] The fact that Mr. Pettit was in Phoenix when he spoke to Mr. Rachal does not preclude consideration of the call. *Cf. Bancroft & Master, Inc.*, 223 F .3d at 1087-88 (letter mailed from Georgia to Virginia was expressly aimed at California).

TENTATIVE CONCLUSIONS - 8

forum if it has or will have a significant impact upon the plaintiff in that state).

*3. Causing harm*

TRC Tire has satisfied two of the three requirements necessary to establish purposeful direction. In order to satisfy the third requirement, TRC Tire must demonstrate that Extreme Tire caused harm that it knew was likely to be suffered in the forum state. 433 F.3d at 1206. It is true that TRC Tire did not intend to use or sell the tires in Washington. To the contrary, the company had tentatively arranged to sell them to a North Dakota tire dealer. The fact that some of the harm allegedly occurred in another state is relevant but not dispositive. *Id.* at 1207. It is enough that TRC Tire allegedly sustained a serious financial loss in Washington. Furthermore, Mr. Rachal arguably should have foreseen that the loss would be sustained here. As noted above, he knew that Messrs. Servine and Profit were purchasing the tires on behalf of TRC Tire and that the company's office is located in Spokane.

In sum, TRC Tire has shown that Extreme Tire purposefully directed acts at this forum. By itself, however, TRC Tire's showing is not enough to establish the existence of specific jurisdiction. TRC Tire also must demonstrate that its claims arise out of Extreme Tire's forum-related acts. *Id.* at 1206.

B. Arising Out Of

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claims arise out of the defendant's forum-related acts. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir.2007). TRC Tire must show that it would not have suffered an injury "but for" Extreme Tire's forum-related acts. *Id.* TRC Tire alleges that Mr.

TENTATIVE CONCLUSIONS - 9

Rachal misrepresented the quality of the tires, and that his alleged misrepresentations breached duties he owed under contract and tort law. Thus, his alleged forum-related communications are an essential part of TRC Tire's claims. That being the case, its claims arise out of his forum-related communications. *See Dole*, 303 F.3d at 1114 (plaintiff's claims arose out of defendant's forum-related contacts where their contacts were an essential part of the plaintiff's claims). As Extreme Tire points out, Mr. Rachal only had a few conversations with Mr. Servine concerning the tires. While Extreme Tire is correct, even a "'single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state.'" *Menken*, 503 F.3d at 1060 (quoting *Yahoo! Inc.*, 433 F.3d at 1210). Consequently, the burden now shifts to Extreme tire to show that exercising jurisdiction would be unreasonable. *Id.*

   C. Reasonableness

Extreme Tire must present a compelling case that exercising jurisdiction would be unreasonable. 503 F.3d at 1061. The Court must consider seven, non-exhaustive factors in determining whether Extreme Tire has carried its burden. *Id.* at 1060. The first factor is "the extent of the defendants' purposeful interjection into the forum state's affairs." *Id.* Extreme Tire actively has solicited, and continues to solicit, business in the forum state. This factor weighs in favor of exercising jurisdiction in this forum. The second factor is "the burden on the defendant of defending in the forum." *Id.* Extreme Tire is a small company. It will be heavily burdened by having to defend itself in this forum. This factor weighs against exercising jurisdiction. The third factor is "the extent of conflict

TENTATIVE CONCLUSIONS - 10

with the sovereignty of the defendants' state." *Id.* Exercising jurisdiction over Extreme Tire will not infringe Louisiana's sovereignty. This factor weighs in favor of exercising jurisdiction. The fourth factor is "the forum state's interest in adjudicating the dispute." *Id.* Washington has a strong interest in protecting its residents from misrepresentations in business transactions. This factor weighs in favor of exercising jurisdiction. The fifth factor is " the most efficient judicial resolution of the controversy." *Id.* Evidence could be located in a number of states, including Louisiana, Washington, Idaho, Montana, and perhaps Arizona. As between Louisiana and Washington, the latter is probably somewhat more convenient. This factor tends to weigh in favor of exercising jurisdiction. The sixth factor is "the importance of the forum to the plaintiff's interest in convenient and effective relief." *Id.* There is no indication that TRC Tire would be unable to obtain adequate relief from Extreme Tire in Louisiana. This factor weighs against exercising jurisdiction. The seventh and final factor is "the existence of an alternative forum." *Id.* There is every indication that Louisiana is available as an alternative forum for resolution of the parties' dispute. This factor weighs against exercising jurisdiction. On balance, the preceding seven factors tend to weigh in favor of exercising jurisdiction over Extreme Tire in Washington. Extreme Tire has not presented a compelling case against exercising jurisdiction.

**TENTATIVE CONCLUSIONS**

As far as the Due Process Clause is concerned, the critical issue is whether Extreme Tire's contacts with Washington are such that the company should "'reasonably anticipate being haled into court" in this forum.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 119,

TENTATIVE CONCLUSIONS - 11

107 S.Ct. 1026, 1036, 94 L.Ed.2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). A company whose owner actively seeks to sell tires in Washington, and who, in the process of selling two tires, materially misrepresents their quality, should reasonably anticipate being forced to defend itself in this forum. Thus, the Court is inclined to deny Extreme Tire's motion to dismiss. Having said that, the Court does not think the motion is frivolous.[4]

**CONCLUSIONS ARE TENTATIVE**

The conclusions set forth above are tentative. After listening to oral argument, the Court may modify or abandon some or all of them. Since this is not an order, the Court will not consider a motion for reconsideration. Nor will the Court consider supplemental evidence or memoranda. The record is complete for purposes of the defendant's Rule 12(b)(2) motion.

**THE DISTRICT COURT EXECUTIVE** is hereby directed to enter the Court's tentative conclusions and furnish copies to counsel.

**DATED** this ___11th___ day of July, 2008.

                        s/ Fred Van Sickle
                          Fred Van Sickle
              Senior United States District Judge

---

[4] In view of the Court's tentative conclusion regarding specific jurisdiction, it is unnecessary to determine whether general jurisdiction exists.

TENTATIVE CONCLUSIONS - 12