UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TRC TIRE SALES, LLC,

        Plaintiff,

        v.

EXTREME TIRE & SERVICE, INC.,

        Defendant.

No. CV-08-015-FVS

ORDER DENYING MOTION TO DISMISS

**THIS MATTER** came before the Court based upon the defendant's motion to dismiss for lack of personal jurisdiction. The defendant was represented by Geana M. Van Dessel; the plaintiff by Michael R. Tucker.

**SUMMARY**

TRC Tire Sales, LLC, ("TRC Tire") is organized under the law of the law of the State of Washington. Its principal place of business is Spokane, Washington. Extreme Tire & Service, Inc., ("Extreme Tire") is organized under the law of the State of Louisiana. Its principal place of business is Mandeville, Louisiana. TRC Tire purchased two used, commercial tires from Extreme Tire for the sum of one-hundred thirty thousand dollars. Afterward, TRC Tire allegedly learned the tires have defects which render them commercially worthless. TRC Tire filed an action against Extreme Tire in Spokane County (Washington) Superior Court seeking relief under both contract and tort law. Extreme Tire removed the action to federal court, 28

ORDER - 1

U.S.C. § 1446, based upon diversity of citizenship, 28 U.S.C. §§ 1441(b), 1332(a)(1). Now, Extreme Tire moves to dismiss on the ground it is not subject to personal jurisdiction in this forum. Fed.R.Civ.P. 12(b)(2). On July 11, 2008, the Court tentatively decided to deny Extreme Tire's motion. The parties discussed the Court's tentative conclusion during oral argument on July 23rd. For the reasons set forth below, the Court adheres to its original conclusion.

**BACKGROUND**

The story begins late in 2006. At the time, the tires at issue in this case were owned by a third party and located in Phoenix, Arizona. The third party wanted to sell the tires. The owner of Extreme Tire, Ronnie Rachal, hoped to broker a sale. To that end, he listed the tires upon his company's website and sent a mass email to tire dealers around the United States, including at least one, and perhaps as many as six, in Washington.

Thomas Servine, one of TRC Tire's co-owners, learned about the tires from another Washington tire dealer. He telephoned Mr. Rachal on July 24, 2007. Mr. Servine alleges that Mr. Rachal told him the tires were "clean"; that is to say, they did not have any repairs and did not need any. Mr. Servine decided to purchase the tires. The terms of the purchase were finalized via telephone and email.

As explained above, the tires were owned by a third party and located in Phoenix. Extreme Tire bought the tires from the third party and sold them to TRC Tire. Rick Pettit, TRC Tire's other co-owner, flew to Phoenix on or about July 25th and arranged for the tires to be trucked to the company's storage facility, which is located in the State of Idaho. There was some confusion with respect

ORDER - 2

to the purchase price.  Mr. Servine called Mr. Rachal and discussed the matter.  Ultimately, he agreed to pay $130,000 for the tires.  TRC Tire wired payment to Extreme Tire.

TRC Tire planned to sell the tires to a dealer in the State of North Dakota.  The North Dakota dealer asked TRC Tire to ship the tires to an expert in the State of Montana for inspection.  The expert determined that the tires needed repair.  As a result, the North Dakota dealer refused to accept the tires.  TRC Tire arranged for another expert in Montana to examine the tires.  He discovered damage that the first expert missed.  In the opinion of the second expert, the tires have no commercial value.

After receiving the second expert's report, Mr. Servine attempted to communicate with Mr. Rachal by telephone and by email.  Mr. Servine alleges he sent numerous messages indicating that TRC Tire refuses to accept the tires on the ground they are nonconforming goods.  According to Mr. Servine, Mr. Rachal has not responded to any of the messages.  Consequently, TRC Tire filed the instant action.

**RULING**

A nonresident corporation submits itself to the jurisdiction of the courts of the State of Washington with respect to any cause of action that arises out of business which the corporation transacts in this state.  RCW 4.28.185(1)(a).  The jurisdiction conferred by RCW 4.28.185(1)(a) -- *i.e.*, specific jurisdiction -- extends to the limit imposed by the due process clause.  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir.1995).  The Ninth Circuit has reduced the requirements of due process to a three-prong test:

>    (1) The non-resident defendant must purposefully direct his
>        activities or consummate some transaction with the forum or

ORDER - 3

>resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir.2006) (en banc) (citations omitted) (hereinafter "*Yahoo!*").

The Ninth Circuit often refers to the first prong of the test as the "purposeful-availment" prong. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004). The term "purposeful availment" is more complex than it may appear at first blush. It includes two related, but analytically distinct, concepts; namely, purposeful availment and purposeful direction. *Id.* The term purposeful availment is closely associated with contract cases. *Id.* When considering specific jurisdiction in the context of a pure contract case, the Ninth Circuit typically asks whether the non-resident defendant has purposefully availed himself of the privilege of conducting activities or consummating a transaction in the forum, "focusing on activities such as delivering goods or executing a contract." *Yahoo!*, 433 F.3d at 1206 (internal punctuation, alterations, and citations omitted). By way of contrast, the term "purposeful direction" is closely associated with tort cases. *Schwarzenegger*, 374 F.3d at 802. When considering specific jurisdiction in the context of a pure tort case, the Ninth Circuit typically inquires whether the non-resident defendant has purposefully directed "activities at the forum state, applying an 'effects' test

ORDER - 4

that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo!*, 433 F.3d at 1206 (internal punctuation, alterations, and citations omitted).

The "effects" test is drawn from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). As interpreted by the Ninth Circuit, *Calder* stands for the proposition that the purposeful-availment prong "is satisfied even by a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002 (internal punctuation and citations omitted). However, the *Calder* "effects" test is subject to a significant limitation. It "applies only to intentional torts, not to . . . breach of contract and negligence claims[.]" *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir.2007).

One of the issues raised by Extreme Tire at oral argument is whether this case should be classified as a "contract" case or a "tort" case. That is to say, should the Court engage in purposeful-availment analysis (closely associated with contract cases) or purposeful-direction analysis (closely associated with tort cases)? Extreme Tire points out that TRC Tire's claims are rooted in the sale of two expensive, commercial tires. Given the origin of TRC Tire's claims, says Extreme Tire, the Court should view this case as a "contract" case rather than a "tort" case even though TRC Tire has pleaded both tort and contract claims. As partial authority for this argument, Extreme Tire has cited three cases in which the Ninth Circuit employed purposeful-availment (*i.e.*, contract) analysis. The

ORDER - 5

three cases are *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir.1991); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir.1988); and *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310 (9th Cir.1987).

If Extreme Tire is correct, one would expect to find that, in each of the three preceding cases, the Ninth Circuit employed purposeful-availment analysis despite the fact that the plaintiff pleaded both contract and intentional tort claims. Is that what occurred? In *T.M. Hylwa*, the plaintiff "sued Palka . . . pursuant to the Employees Retirement Income Security Act . . ., and the Federal Declaratory Judgment Act . . . seeking a declaratory judgment establishing the amount of benefits owed Palka under Hylwa's various pension plans." 823 F.2d at 312. While "Hylwa also asserted pendent state claims against Palka for negligence, breach of contract, and money had and received[,]" *id.*, there is no indication that Hylwa pleaded an intentional tort. *See id.* In *McGlinchy*, the plaintiffs filed both contract and tort claims. 845 F.2d at 815. Nevertheless, they relied upon "a contract claim, not [upon] a tort claim," in order to establish personal jurisdiction. *Id.* at 817.[1] Finally, in *Roth*, the plaintiff filed a complaint "seeking declaratory relief to determine the status of his rights to produce [a] film." 942 F.2d at 620. He did not assert a tort claim.

The preceding cases are readily distinguishable from this one.

---

[1] Five years after deciding *McGlinchy*, the Ninth Circuit explained, "[I]n *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir.1988), we refused to apply the *Calder* effects test when the underlying action involved a contract dispute, not a tort." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir.1993).

ORDER - 6

In none of them did the plaintiff rely upon an intentional tort to establish specific jurisdiction. Here, by contrast, TRC Tire alleges that Mr. Rachal made intentionally false statements to a person who was located in the State of Washington. It is true, as Extreme Tire argues, that TRC Tire's intentional tort claims are only part of its complaint. However, the Ninth Circuit has never held that the *Calder* effects test is applicable only when intentional tort claims are the core of the plaintiff's case. To the contrary, in *Yahoo!*, the en banc Court invoked the effects test in a case that did not involve any tort claims -- or contract claims, for that matter. 433 F.3d at 1206 ("this case is neither a tort nor a contract case"). The en banc Court did not seem bothered by the absence of tort claims. Instead, it focused upon whether the plaintiff had satisfied the elements of the effects test. *See id.* at 1208-11. So, too, here. TRC Tire has alleged facts that implicate the test. Thus, the issue is whether TRC Tire has carried its burden.

A. Purposeful Direction

The first prong of the Ninth Circuit's three-prong, specific jurisdiction-jurisdiction test is purposeful direction. TRC Tire may satisfy this prong by establishing that Extreme Tire "committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206 (internal punctuation and citations omitted).

*1. Intentional act*

TRC Tire must show that Extreme Tire's jurisdictionally-relevant acts were intentional. *Id.* at 1209. Mr. Rachal does not dispute that he sent an email to dealers in the State of Washington advertising the tires, and that he spoke by telephone with both Mr. Servine and Mr.

ORDER - 7

Pettit.  These are intentional acts.

*2. Express aiming*

An act is expressly aimed at the forum if it has or will have a significant impact upon the plaintiff in that state.  *Id.*  An expressly-aimed act need not be wrongful, although some are.  *Id.* at 1207-08.  The following are examples of expressly-aimed acts:

In *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989), an administrator at the University of Arizona allegedly called an administrator at the University of Alberta and inquired about a professor who was then employed by the University of Arizona but who formerly had been employed by the University of Alberta.  The Canadian administrator allegedly made disparaging remarks about the Arizona professor.  *Id.*  The Arizona professor filed an action in the State of Arizona alleging that the comments violated an agreement he had with the University of Alberta and, in addition, tortiously undermined his employment with the University of Arizona.  *Id.*  The Ninth Circuit held that the Canadian administrator was subject to specific jurisdiction in Arizona.  *Id.* at 1259-60.  Since deciding *Brainerd*, the Ninth Circuit has cited the Canadian administrator's comments as an instance of express aiming.  *See, e.g., Bancroft & Master, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1087-88 (9th Cir.2000).  Even though he did not initiate the calls, the statements that he allegedly made "during the conversations were not 'untargeted negligence' but rather were 'performed for the very purpose of having their consequences felt in the forum state.'" *Id.* (quoting *Brainerd*, 873 F.2d at 1260).

In *Bancroft & Master*, a Georgia organization sent a letter to the Virginia headquarters of an organization that served as the registrar

ORDER - 8

of domain names.  223 F.3d at 1084-85.  The Georgia organization complained to the registrar that a California corporation was using its domain name without authorization.  *Id.* at 1085.  The California corporation filed an action in California.  *Id.*  The Ninth Circuit held that the Georgia organization's complaint was expressly aimed at the forum state.  Despite the fact that the Georgia organization mailed its letter to Virginia, not California, the Georgia organization allegedly knew its letter would trigger the registrar's dispute-resolution procedures, forcing the California corporation to defend its right to use a domain name.  *Id.* at 1087-88.

In *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318-19 (9th Cir.1998), an Illinois resident sent a letter to the corporate office of a California corporation demanding payment for a domain name that he had hijacked.  The corporation filed an action in California.  *Id.* at 1319.  The Ninth Circuit held that the Illinois resident was subject to specific jurisdiction in California.  *Id.* at 1322-23.  Since deciding *Panavision*, the Ninth Circuit has cited the Illinois resident's demand letter as an instance of express aiming.  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir.2000).

In *Rio Properties*, a Costa Rican company ran radio and print advertisements in the State of Nevada offering gamblers an opportunity to wager on sporting events.  284 F.3d at 1012-13.  A Nevada corporation filed suit in Nevada alleging that the Costa Rican company was doing business under a name that infringed its trademark.  *Id.*  The Ninth Circuit held that the Costa Rican company's advertisements were expressly aimed at the forum state because the ads allegedly were part of a marketing campaign which was designed to obtain customers in

ORDER - 9

Nevada.  *See id.* at 1020.

In *Dole*, a California corporation filed an action in the State of California against two former employees who were citizens of the United Kingdom and Germany, respectively, and who lived and worked in Europe.  303 F.3d at 1107.  The corporation alleged that the defendants had made false statements to the corporation's managers in California.  *Id.* at 1109-10.  The Ninth Circuit held that the defendants expressly aimed their communications at California based upon evidence they knew that the corporation's "principal place of business was in California, knew that the decisionmakers for [the corporation] were located in California, and communicated directly with those California decisionmakers."  *Id.* at 1112.  At the same time, the Ninth Circuit recognized that not every foreign act with foreseeable effects in the forum state gives rise to specific jurisdiction.  *Id.* (internal punctuation and citation omitted).  The foreign act must have a significant impact.  In *Dole*, that requirement was satisfied by evidence indicating that the defendants' communications were part of a scheme to induce the corporation's managers "to implement a new importing system, and, as a consequence, to enter into *significant and detrimental* contractual arrangements."  *Id*. (emphasis added).

In *Yahoo! Inc.*, two French organizations obtained orders from a French court requiring a California internet service provider to prevent its customers in France from obtaining access to certain Nazi-related artifacts, texts, and websites.  433 F.3d at 1202-04.  The internet service provider filed an action in California challenging the enforceability of the orders in the United States.  *Id*. at 1204.  The Ninth Circuit held that the orders were expressly aimed at

ORDER - 10

California because, in order to comply, the internet service provider had to modify its servers, which were located in the forum state. *Id*. at 1209.

With the preceding cases in mind, it is appropriate to turn to the facts of this one. Extreme Tire regularly sends email advertisements to a limited number of Washington tire dealers. The purpose of the advertisements is to solicit business. *Cf. Rio Properties*, 284 F.3d at 1020 (defendant conducted advertising campaign in forum state). Although TRC Tire did not receive an email advertisement concerning the tires, Mr. Servine learned about them from some other source. He initiated contact with Mr. Rachal. His call is precisely the sort of inquiry that Mr. Rachal hoped his advertisements would generate. Ultimately, Mr. Rachal discussed the tires with both Mr. Servine and Mr. Pettit.[2] He knew they were TRC Tire's decisionmakers, and that their company's office is located in Washington. He hoped to persuade them to purchase the tires. *Cf. Panavision*, 141 F.3d at 1322 (defendant sent a letter to the forum state seeking payment for the use of a domain name). Unlike the defendant in *Panavision*, he succeeded; and when he did, he arranged for TRC Tire to wire payment to Louisiana. In certain respects, his conduct is similar to that described in *Dole*. 303 F.3d at 1112 (defendants allegedly misrepresented facts in order to manipulate the company's decision-making process). Without question, Mr. Rachal's alleged misrepresentations are far less elaborate than the ones

---

[2]The fact that Mr. Pettit was in Phoenix when he spoke to Mr. Rachal does not preclude consideration of the call. *Cf. Bancroft & Master*, 223 F .3d at 1087-88 (letter mailed from Georgia to Virginia was expressly aimed at California).

ORDER - 11

alleged in *Dole*. Nevertheless, if TRC Tire's allegations are true, the company has sustained a serious financial loss as a result of Mr. Rachal's conduct; a loss which the company experienced in the forum state. *Dole*, 303 F.3d at 1113-14 (a corporation frequently suffers financial loss at its principal place of business). Given the significant impact that Mr. Rachal's jurisdictionally-relevant communications allegedly have had upon TRC Tire in the forum state, his communications constitute expressly aimed acts. *Yahoo! Inc.*, 433 F.3d at 1209 (an act is expressly aimed at the forum if it has or will have a significant impact upon the plaintiff in that state).

*3. Causing harm*

TRC Tire has satisfied two of the three requirements necessary to establish purposeful direction. In order to satisfy the third requirement, TRC Tire must demonstrate that Extreme Tire caused harm that it knew was likely to be suffered in the forum state. 433 F.3d at 1206. It is true that TRC Tire did not intend to use or sell the tires in Washington. To the contrary, the company had tentatively arranged to sell them to a North Dakota tire dealer. The fact that some of the harm allegedly occurred in another state is relevant but not dispositive. *Id.* at 1207. It is enough that TRC Tire allegedly sustained a serious financial loss in Washington. Furthermore, Mr. Rachal arguably should have foreseen that the loss would be sustained here. He knew that Messrs. Servine and Profit were purchasing the tires on behalf of TRC Tire and that the company's office is located in Spokane.

B. Arising Out Of

TRC Tire has made a prima facie showing that Extreme Tire purposefully directed acts at this forum. By itself, however, TRC

ORDER - 12

Tire's showing is not enough to establish the existence of specific jurisdiction. TRC Tire also must demonstrate that its claims arise out of Extreme Tire's forum-related acts. *Yahoo! Inc.*, 433 F.3d at 1206. The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claims arise out of the defendant's forum-related acts. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir.2007). TRC Tire must show that it would not have suffered an injury "but for" Extreme Tire's forum-related acts. *Id.*

TRC Tire alleges that Mr. Rachal misrepresented the quality of the tires and that his alleged misrepresentations breached duties he owed under contract and tort law. Thus, his alleged forum-related communications are an essential part of TRC Tire's claims. That being the case, its claims arise out of his forum-related communications. *See Dole*, 303 F.3d at 1114 (plaintiff's claims arose out of defendant's forum-related contacts where their contacts were an essential part of the plaintiff's claims). Extreme Tire disagrees with this conclusion. As it points out, Mr. Rachal only had a few conversations with Mr. Servine concerning the tires. While Extreme Tire is correct, even a "'single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state.'" *Menken*, 503 F.3d at 1060 (quoting *Yahoo! Inc.*, 433 F.3d at 1210). This is such a case. Consequently, the burden now shifts to Extreme tire to show that exercising jurisdiction would be unreasonable. *Id.*

C. Reasonableness

Extreme Tire must present a compelling case that exercising jurisdiction would be unreasonable. *Menken*, 503 F.3d at 1061; *Bancroft & Master*, 223 F .3d at 1088. The Court must consider seven,

ORDER - 13

non-exhaustive factors in determining whether Extreme Tire has carried its burden. *Id.* at 1060. The first factor is "the extent of the defendant['s] purposeful interjection into the forum state's affairs." *Id.* Extreme Tire actively has solicited, and continues to solicit, business in the forum state. This factor weighs in favor of exercising jurisdiction in this forum. The second factor is "the burden on the defendant of defending in the forum." *Id.* Extreme Tire is a small company. It will be heavily burdened by having to defend itself in this forum. This factor weighs against exercising jurisdiction. The third factor is "the extent of conflict with the sovereignty of the defendant['s] state." *Id.* At oral argument, Extreme Tire insisted that this factor is relevant only when a foreign nation is involved. Extreme Tire did not cite any authority for this proposition, and it appears to be inconsistent with Ninth Circuit practice. *See, e.g., Menken*, 503 F.3d at 1060 (Nevada and Arizona); *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir.2004) (Arizona and New York); *Panavision*, 141 F.3d at 1323 (California and Illinois). As a result, the Court adheres to its two-part conclusion that exercising jurisdiction over Extreme Tire will not infringe Louisiana's sovereignty and that this factor weighs in favor of exercising jurisdiction. The fourth factor is "the forum state's interest in adjudicating the dispute." *Id.* Washington has a strong interest in protecting its residents from misrepresentations in business transactions. This factor weighs in favor of exercising jurisdiction. The fifth factor is " the most efficient judicial resolution of the controversy." *Id.* Evidence could be located in a number of states, including Louisiana, Washington, Idaho, Montana, and perhaps Arizona. As between Louisiana and Washington, the latter is

ORDER - 14

probably somewhat more convenient.  This factor tends to weigh in favor of exercising jurisdiction, but only slightly.  The sixth factor is "the importance of the forum to the plaintiff's interest in convenient and effective relief."  *Id.*  At oral argument, TRC Tire asserted that it would be unable to obtain relief under Article 2 of the Uniform Commercial Code if it proceeds in Louisiana.  However, since TRC Tire did not provide any support for its assertion, the Court adheres to its original conclusion that TRC Tire will be able to obtain adequate relief from Extreme Tire in Louisiana.  This factor weighs against exercising jurisdiction.  The seventh and final factor is "the existence of an alternative forum."  *Id.*  There is every indication that Louisiana is available as an alternative forum for resolution of the parties' dispute.  This factor weighs against exercising jurisdiction.  In sum, Extreme Tire has fallen short of establishing a compelling case against exercising jurisdiction.  Factors 2, 6, and 7 weigh against.  Factors 1, 3, and 4 weigh in favor.  Factor 5 tips the balance slightly in favor.  Where the factors are fairly evenly balanced, exercising jurisdiction is reasonable.  *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir.2003) ("balance is essentially a wash").  *See also Menken*, 503 F.3d at 1061 (collecting cases).[3]

D. Conclusion

As far as the Due Process Clause is concerned, the critical issue is whether Extreme Tire's contacts with Washington are such that the

---

[3] In view of the Court's analysis of specific jurisdiction, the Court declines to determine whether general jurisdiction exists.

ORDER - 15

company should "'reasonably anticipate being haled into court" in this forum.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 119, 107 S.Ct. 1026, 1036, 94 L.Ed.2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). A company that actively seeks to sell tires in Washington, and which, in the process of selling two tires, materially misrepresents their quality, should reasonably anticipate being forced to defend itself in this forum.[4]

**IT IS HEREBY ORDERED:**

Extreme Tire's motion to dismiss (**Ct. Rec. 5**) is denied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___6th___ day of August, 2008.

             s/ Fred Van Sickle             
                Fred Van Sickle
       Senior United States District Judge

---

[4]TRC Tire has made a prima facie showing that exercising personal jurisdiction over Extreme Tire is consistent with the due process clause. That is not necessarily the end of the matter, however. At trial, TRC Tire must prove personal jurisdiction by a preponderance of the evidence. *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir.1990).

ORDER - 16